THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| FLUOR ENTERPRISES, INC.<br>6700 Las Colinas Blvd.<br>Irving, TX 75039<br><br>    Plaintiff,<br><br>v.<br><br>MITSUBISHI HITACHI POWER SYSTEMS<br>  AMERICAS, INC.<br><br>SERVE:  CT Corporation System<br>             Registered Agent<br>             4701 Cox Road, Ste 285<br>             Glen Allen, VA 23060<br><br>    Defendant. | CIVIL ACTION NO. 3:17cv00622 |

## **COMPLAINT**

Plaintiff, Fluor Enterprises, Inc., by and through its undersigned attorneys, alleges as follows:

### **The Parties**

1. Fluor Enterprises, Inc. ("Fluor") is a California corporation with its principal place of business in Irving, Texas.

2. Mitsubishi Hitachi Power Systems Americas Inc., f/k/a Mitsubishi Power Systems Americas, Inc. ("Mitsubishi"), is a Delaware corporation with its principal place of business in Lake Mary, Florida.

**Jurisdiction and Venue**

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as the citizenship of Fluor is diverse from that of Mitsubishi and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue in this jurisdiction is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district and the parties have agreed, in the Contract giving rise to said claims, that venue shall be in this district.

**Factual Background**

5. Fluor is an engineering, procurement, construction, maintenance and project management company that is engaged in the design and construction of large projects around the world.

6. Mitsubishi is engaged in the business of providing thermal power generation systems, including steam and combustion turbines and the equipment and components associated with their operation.

*The Project and the Turbine Supply Agreement*

7. On or about February 23, 2012, Mitsubishi entered into a Turbine Supply Agreement ("TSA") with Virginia Electric and Power Company ("Owner") whereby Mitsubishi agreed to supply and Owner agreed to purchase three (3) M501GAC combustion turbine generators and one (1) TC4F-33 steam turbine generator and related ancillary equipment and services for use in a 1300 megawatt combined cycle, natural gas-fired power station that the Owner was developing in Brunswick County, Virginia (the "Project"). A copy of the TSA is attached hereto as **Exhibit A**.

8. The TSA required Mitsubishi to, *inter alia*, deliver to the Project both "Major Components" and "Minor Components." Major Components were eight in number and included, for the so-called CT Units, each of the combustion turbines proper and the combustion turbine generators proper, and for the so-called ST Unit, the steam turbine proper and the steam turbine generator proper. Minor Components were defined in Article 1 (Definitions) of the TSA as follows:

> **Minor Components** means ***all equipment and components of a Unit, Other than the Major Components***. For the CT Unit [Combustion Turbine], such items include, but are not limited to: the inlet duct, exhaust duct, inlet filter house, the TCA cooler, and the fuel gas heater. For the ST Unit [Steam Turbine], such items include, but are not limited to: the lube oil reservoir, the EH oil unit, and the gland steam condenser with exhaust fans. [Emphasis added].

9. Mitsubishi was obligated to "furnish the Units, Related Services and all other associated Work, . . . completely, accurately and in accordance with the terms of [the TSA] Agreement . . ."

10. The TSA included delivery schedules for both Major and Minor Components. Mitsubishi was required to deliver the Major Components, *i.e.*, the Combustion Turbine Units 1, 2 and 3 and the Steam Turbine Unit, by March 15, April 15, May 15 and June 15, 2014 respectively. With respect to the Minor Components, the TSA provided that they would be delivered as follows:

> 5.2.2 **<u>Minor Components</u>**. Supplier shall deliver the Minor Components to the applicable Delivery Points in accordance with the applicable delivery schedule set forth in **Exhibit B – Delivery Schedule and Delivery Points**. Supplier shall not deliver the Minor Components earlier than sixty (60) Days prior to the dates shown above without the prior written consent of the Owner.

3

11. The referenced delivery schedule, Exhibit B to the TSA, tied the required delivery dates for the Minor Components to the required delivery dates for the Major Components, such that Mitsubishi's deadline for the delivery of a particular Minor Component or class of Minor Components would be expressed as some period of weeks either before or after the deadline for the delivery of the particular Major Component. For example, the "air inlet filter house and inlet duct" for Combustion Turbine Unit 1 were to be delivered "3 weeks before" that unit's delivery while the "generator control systems" were to be delivered "3 weeks after" that unit's delivery.

12. The TSA also included a liquidated damages provision whereby Mitsubishi would be liable for certain specified damages for each day that a Major or Minor Component item was delivered past the required delivery date. The TSA's liquidated damages provision provided in relevant part as follows:

> 9.1 **Liquidated Damages**. The Parties agree that it would be extremely difficult to determine precisely the amount of actual damages that would be suffered by Owner due to (i) the failure of Supplier to deliver the Major Components and the Minor Components to the Delivery Points by the Required Delivery Dates, (ii) the failure of the Units to achieve the Performance Guarantees or (iii) the untimely delivery of the Key Document Packages by Supplier, that liquidated damages set forth in this Article 9 are a fair and reasonable determination of the amount of actual damages that would be suffered by Owner for the applicable deficiency and that these liquidated damages and other amounts do not constitute a penalty. Supplier agrees that the liquidated damages set forth in Section 9.2 (Liquidated Damages for Failure to Deliver by the Required Delivery Date), Section 9.3 (Liquidated Damages For Failure to Meet Performance Guarantees) and Section 9.4 (liquidated Damages for Untimely Submittal of Documents) are a fair and equitable method for determining Owner's damages and Supplier hereby expressly waives any defense or right to contest the validity of these liquidated damages on the grounds that they are void as penalties or are not reasonably related to actual damages.

13. The TSA had differing *per diem* liquidated delay damage amounts for which Mitsubishi would be liable, depending on whether the late-delivered component was a Major Component or a Minor Component. With respect to late-delivered Minor Components, the TSA provided as follows:

> 9.2.2 **Delay in Delivery of Minor Components**. For the delay in the delivery of Minor Components of a Unit by the applicable Required Delivery Date, Supplier agrees to pay Owner as liquidated damages for each Day of unexcused delay from the applicable Required Delivery Date through the date that the last Minor Components of a Unit are actually delivered to the Delivery Points:

| DELAY | LIQUIDATED DAMAGES |
|---|---|
| 1 - 30 Days | $ 25,000 per Day |
| 31 - 60 Days | $50,000 per Day |
| Greater than 60 Days | $ 75,000 per Day |

*The EPC Contract*

14. On July 31, 2012, Owner and Fluor entered into an "Agreement Between Virginia Electric and Power Company and Fluor Enterprises, Inc. for Engineering, Procurement and Construction for the Brunswick County Power Station" (the "EPC Contract").

15. Under the terms of the EPC Contract, Fluor was to perform all design work, engineering, procurement, construction, installation, start-up, testing and other services necessary for the commencement of work on and completion of the Project for the agreed-upon lump sum price provided therein. Fluor's responsibilities included the installation and testing of the combustion and steam turbine generators being provided by Mitsubishi. A copy of the EPC Contract is attached hereto as **Exhibit B**.

16. The EPC Contract further provided that if Fluor failed to substantially complete its obligations by achieving so-called Provisional Acceptance by the Required Provisional

Acceptance Date, as those terms are defined in the EPC Contract, then Fluor would be liable to the Owner for liquidated delay damages for said delay as specified in the EPC Contract.

*Assignment of the TSA to Fluor*

17. Also on July 31, 2012, Owner entered into a "Partial Assignment, Assumption and Coordination Agreement" ("Partial Assignment Agreement") with Fluor and Mitsubishi whereby Owner assigned to Fluor certain of its rights and obligations under the TSA and Mitsubishi agreed to such assignment. A copy of the Partial Assignment Agreement is attached hereto as **Exhibit C**.

18. Among the obligations retained by Owner under the Partial Assignment Agreement and not assigned to Fluor was that regarding compensation, such that Owner would remain responsible for paying Mitsubishi the amounts owed to it for supplying the Major and Minor Components pursuant to the TSA.

19. Among the rights under the TSA that were assigned to Fluor under the Partial Assignment Agreement was the above-referenced liquidated damages provision.

20. The Partial Assignment Agreement also included an "Attachment 6" captioned "Amendments to the Turbine Supply Agreement," which amended the TSA by providing in relevant part as follows:

> **A.** Add the following new Section 5.5:
>
> 5.5 **Project Schedule**. EPC Contractor [Fluor] will provide Supplier [Mitsubishi] periodic updates to the EPC Contractor's "Level III Detailed Schedule" under the EPC Agreement provided in pdf. format (the "Project Schedule") consistent with its schedule updates issued to Owner.

> **B.     Replace Section 9.5 (Supplier's Excused Delay) in its entirety with the following:**
>
> 9.5  **Supplier's Excused Delay**.  Supplier shall not be assessed liquidated damages under Sections 9.2 (Liquidated Damages for Failure to Deliver by the Required Delivery Date) or 9.4 (Liquidated Damages for Untimely Submittal of Documents) to the extent that, in EPC Contractor's [Fluor's] discretion exercised in good faith, such delays of delivery do not have any material impact on the progress of the engineering, erection, or installation of the Units under the Project Schedule.

21.     The effect of the aforedescribed amendments to the TSA was to keep Mitsubishi informed of Fluor's planned and actual progress in the performance of the EPC Contract, and to vest in Fluor the right to determine, in good faith, if and when any late delivery of Major or Minor Components by Mitsubishi materially impacted Fluor's progress, so as to warrant the assessment of liquidated damages as provide in the TSA.

*The Project and Mitsubishi's Chronic Delivery Problems*

22.     Fluor mobilized to the Project in November of 2013 and began construction work in February of 2014.

23.     By April 2014, Mitsubishi had already begun failing to meet the Minor Component delivery schedule it had accepted in the TSA.

24.     In addition to their lateness, the deliveries evidenced a complete lack of quality control, in that shipments were repeatedly mislabeled as to their contents or had no labels at all, thereby requiring Fluor to expend substantial time and effort locating the components required for the current construction activities then underway.

25.     By letter dated April 22, 2014, Fluor put Mitsubishi on notice that liquidated damages under Article 9 of the TSA would begin accruing based on the late delivery of two Minor Components, which should have been delivered on January 11, 2014.

26. The late and mis-labeled deliveries continued and worsened, which delayed Fluor's progress under the EPC Contract and exposed it to the liquidated delay damages provided therein.

27. To avoid the imposition of liquidated damages by the Owner, Fluor was forced to accelerate the construction process at great additional cost.

28. Fluor was also forced to create a special team to meet weekly with Mitsubishi's representatives on the job site for the purpose of identifying late deliveries and implementing, at great additional cost, corrective action or "work arounds" to eliminate or mitigate their adverse impact on the Project.

29. For the duration of the Project, Fluor continued said extraordinary measures in an effort to mitigate the impact of Mitsubishi's chronically late and improperly labeled deliveries of Minor Components, but its efforts did not succeed entirely.

30. Under the terms of the TSA, as assigned to Fluor by the Partial Assignment Agreement, Mitsubishi was obligated to pay to Fluor liquidated damages at the specified *per diem* rate for every day that a Minor Component failed to meet the applicable Required Delivery Date and such late delivery, as determined by Fluor, had a material impact on the progress of Fluor's engineering, erection, or installation under the Project Schedule.

31. Fluor has made demand on Mitsubishi for said liquidated damages, but Mitsubishi has failed and refused to pay Fluor the liquidated damages for which it is liable.

32. All settlement efforts and conditions precedent required by the TSA have been exhausted without success.

33. Fluor has been damaged as a result of Mitsubishi's breach of the TSA and the Partial Assignment Agreement as aforedescribed.

**Prayer for Relief**

**WHEREFORE**, Plaintiff prays that judgment be entered in its favor against Defendant for monetary damages in an amount to be established at trial, prejudgment and post-judgment interest and court costs, and for such other and further relief as the evidence warrants and as deemed just and proper.

Dated: September 13, 2017

Respectfully submitted,
FLUOR ENTERPRISES, INC.

By: ___/ s /_*James V. Meath*_____
James V. Meath
Virginia State Bar No. 18999
Counsel for Plaintiff
WILLIAMS MULLEN, P.C.
P.O. Box 1320
Richmond, Virginia 23218-1320
Telephone: (804) 420-6412
Facsimile: (804) 420-6507
jmeath@williamsmullen.com

Brian Cashmere
Virginia State Bar No. 42651
WILLIAMS MULLEN, P.C.
8300 Greensboro Drive, Suite 1100
Tysons Corner, Virginia 22102
Telephone: (703) 760-5200
Facsimile: (703) 748-0244
bcashmere@williamsmullen.com

Harold E. Johnson
Virginia State Bar No. 65591
WILLIAMS MULLEN, P.C.
P.O. Box 1320
Richmond, Virginia 23218-1320
Telephone: (804) 420-6588
Facsimile: (804) 420-6507
hjohnson@williamsmullen.com

Louis R. Pepe (*pro hac vice* application pending)
Connecticut Bar No. 04319
Douglas M. Poulin (*pro hac vice* application pending)
Connecticut Bar No. 10177
Counsel for Plaintiff
McElroy, Deutsch, Mulvaney & Carpenter, LLP
One State Street, 14th Floor
400 Columbus Boulevard
Hartford, CT  06103-3102
Telephone: (860) 522-5175
Facsimile:  (860) 522-2796
lpepe@mdmc-law.com
dpoulin@mdmc-law.com