IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FLUOR ENTERPRISES, INC.,

    Plaintiff,

v.                                                  Civil Action No. 3:17cv622

MITSUBISHI HITACHI POWER
SYSTEMS AMERICAS, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Fluor Enterprises, Inc.'s ("Fluor") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 18.) Defendant Mitsubishi Hitachi Power Systems Americas, Inc. ("Mitsubishi") responded, and Fluor replied. (ECF Nos. 20, 21.) Accordingly, the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[2] For the reasons that follow, the Court will deny Fluor's Motion to Dismiss.

---

[1] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[2] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332. Fluor is a citizen of California and Texas, Mitsubishi is a citizen of Delaware and Florida, and the Complaint alleges damages exceeding $75,000.

# I. Factual and Procedural Background

## A. Procedural History

Fluor filed its Complaint against Mitsubishi, alleging one claim for breach of contract. (ECF No. 1.) Mitsubishi timely answered, asserting a single counterclaim against Fluor for defamation. (ECF No. 17.) Fluor moved to dismiss Mitsubishi's defamation claim, contending, pursuant to Federal Rule of Civil Procedure 12(b)(6), that Mitsubishi failed to state a claim on which relief could be granted.

## B. Summary of Allegations in the Counterclaim[3]

Fluor is a California corporation with its principal place of business in Irving, Texas. Fluor designs and constructs large projects worldwide, including managing engineering, procurement, construction, maintenance, and overall project management. Mitsubishi is a Delaware corporation with its principal place of business in Lake Mary, Florida. Mitsubishi manufactures power generating equipment, including gas and steam turbines.

In February 2012, Mitsubishi entered into a Turbine Supply Agreement (the "TSA") with Virginia Electric and Power Company ("VEPCO") to sell turbine generators—one steam turbine generator and three combustion turbine generators—to VEPCO for use in a power generating facility. The facility was located in Brunswick County, Virginia, so the project became known as the "Brunswick Project."

Five months later, in July, 2012, VEPCO contracted with Fluor for Fluor to construct the Brunswick Project (the "Fluor Contract"). Under the Fluor Contract, Fluor was responsible for many aspects of the Brunswick Project, including "all design, engineering, procurement, construction, installation, start-up[,] and testing work necessary to engineer, procure and

---

[3] For purposes of the Motion to Dismiss, the Court will assume the well-pleaded factual allegations in the Counterclaim to be true and will view them in the light most favorable to Mitsubishi. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

construct the Brunswick Project." (Counterclaim ¶ 8, ECF No. 17.) Mitsubishi was not a party to the Fluor Contract. Around the same time VEPCO entered into the Fluor Contract, it assigned the TSA to Fluor through a Partial Assignment, Assumption, and Coordination Agreement. VEPCO retained the obligation to pay Mitsubishi per the terms of the TSA.

Mitsubishi delivered the turbines to the Brunswick Project. VEPCO paid Mitsubishi the total sum contemplated by the TSA. Fluor, however, contends that Mitsubishi breached the TSA because it delivered parts late; it delivered improperly labeled parts; and it delivered parts that did not meet minimum quality requirements. Mitsubishi asserts that it did not breach the TSA, instead contending that it delivered the "Minor Components . . . on or before the dates identified in the delivery schedule." (Answer 7, ECF No. 17.) Mitsubishi states that VEPCO's full payment to Mitsubishi signals substantial compliance and satisfaction with Mitsubishi's work. The Brunswick Project received multiple award and accolades. The President of Fluor made public statements lauding the Brunswick Project as showing Fluor's "ability to achieve quality completion ahead of schedule." (Counterclaim ¶ 14 (emphasis omitted).)

On August 3, 2017, David Seaton, Fluor's Chief Executive Officer (CEO), held a conference call with shareholders and other interested parties during which he discussed Fluor Corporation's Second Quarter Consolidated Financial Results for 2017. During this earnings call, Mr. Seaton made the following statements (the "Statements"):

> All three projects, four if you include the Brunswick project that incurred a charge in 2015, had a fundamental problem. And the projects did not meet the original baseline assumptions due to improper estimating, craft productivity and equipment issues. All of these projects were bid in 2014 by the same pursuit team.
>
> In addition, all four projects were based on next gen turbines or steam generators that were first of a kind for Fluor. The quality control and completeness of these turbines delivered to the site were not in line with our bid assumptions, and we are pursuing our options.

(*Id.* ¶ 15 (emphasis omitted).) Mitsubishi asserts that the Statements are defamatory because they are false statements that impugn the reputation of Mitsubishi and negatively affect its business. Mitsubishi alleges that VEPCO's full payment to them signifies that "the [w]ork was fully functional and capable of dependable combined cycle operation" as required by the TSA. Mitsubishi further contends that Fluor's own records, the project's awards and accolades, and Fluor's statements lauding the Brunswick Project all demonstrate a lack of inadequacy with Mitsubishi's work or products. Mitsubishi avers that Mr. Seaton knew the Statements were false or acted with reckless disregard for the truth of the Statements.

Mitsubishi also contends that people who work in this specialized industry would understand that Mitsubishi provided the turbines referenced in the Statements. In support of this proposition, Mitsubishi states that "numerous current and potential customers immediately contacted" Mitsubishi after the conference call "to inquire as to what were the issues with quality and completeness of [Mitsubishi's] turbines." (Counterclaim ¶ 23.)

## II. Federal Rule of Civil Procedure 12(b)(6) Standard

In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Matkari*, 7 F.3d at 1134; *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim,

or the applicability of defenses." *Martin*, 980 F.2d at 952 (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

### III. Texas Law Governs

When a federal court exercises diversity jurisdiction, it "is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599–600 (4th Cir. 2004). To determine the governing law in a defamation case, "Virginia applies the *lex loci delicti* rule, that is, the law of the place of the wrong." *PBM Prod., LLC v. Mead Johnson Nutrition Co.*, 678 F. Supp. 2d 390, 398 (E.D. Va. 2009), *aff'd sub nom., PBM Prod., LLC v. Mead Johnson & Co.*,

639 F.3d 111 (4th Cir. 2011). Both parties agree that Mr. Seaton made the Statements during Fluor's scheduled earnings call, which presumably emanated from Fluor's headquarters in Irving, Texas.[4] Therefore, Texas law governs the Court's analysis of the Motion to Dismiss.

### IV. Analysis: Motion to Dismiss

Mitsubishi's allegations survive Rule 12(b)(6) scrutiny. First, Mitsubishi plausibly alleges facts supporting all requisite elements of a defamation suit under Texas law. Second, Fluor's assertion that the Statements are protected by privilege is inapplicable at this stage of litigation. The Court will deny Fluor's Motion to Dismiss.

#### A.  Standard for Pleading Defamation Under Texas Law

In Texas, a plaintiff claiming defamation must allege: "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017) (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)). Allegedly defamatory "statements must be construed as a whole, in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement." *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1012 (S.D. Tex. 2000) (citing *Diaz v. Rankin*, 777 S.W.2d 496, 499–500 (Tex. Ct. App. 1989)).

---

[4] Mitsubishi states in its Response that, "[f]or the limited purpose of this Court's consideration of Fluor's Motion to Dismiss, [Mitsubishi] does not dispute that Texas substantive law on defamation applies." (Resp. Mot. Dismiss 3 n.1, ECF No. 20.) Nowhere does Mitsubishi dispute the reasonable inference that "the Statements were presumably made at Fluor's headquarters in Irving, Texas." (Mem. Supp. Mot. Dismiss 4, ECF No. 19.) During the Initial Pre-Trial Conference, counsel for both sides agreed that Texas law applied.

6

### B. Mitsubishi Plausibly Alleges Defamation Under Texas Law

#### 1. Mitsubishi Plausibly Alleges the Publication of a False Statement of Fact to a Third Party

Mitsubishi plausibly alleges that Fluor published a false statement of fact to a third party to satisfy the first prong of the defamation analysis. To allege defamation, "a statement must assert an objectively verifiable fact rather than an opinion." *Moldovan v. Polito*, No. 05-15-01052-CV, 2016 WL 4131890, at *6 (Tex. App. Aug. 2, 2016). The statement must be "sufficiently factual to be susceptible of being proved objectively true or false." *Klentzman v. Brady*, 312 S.W.3d 886, 908 n.22 (Tex. App. 2009).

Mitsubishi contends that Mr. Seaton's statement, "[t]he quality control and completeness of these turbines delivered to the site were not in line with our bid assumptions," is a provably false statement of fact about the quality of Mitsubishi's products. In support, Mitsubishi points to various sources. Mitsubishi contends that "Fluor's own project records . . . show that there were no equipment, quality control or completeness issues with the Turbines." (Counterclaim ¶ 21.) Additionally, Mitsubishi states that VEPCO's decision to pay Mitsubishi in full signals that the work was complete, fully functional, and achieved the "Minimum Performance Guarantees." (*Id.* ¶ 12.) Mitsubishi highlights three industry-based awards or accolades that the Brunswick Project received when asserting that Mr. Seaton's statement was false. Mitsubishi also quotes statements by Fluor's President, Chris Tye, lauding the project as indicating that any claim that quality control faltered could be disproven. These contentions constitute plausible allegations that the Statements are factual in nature and capable of being proven or disproven.

#### 2. Mitsubishi Plausibly Alleges that the Statements were Defamatory of and Concerning Mitsubishi

"A statement is defamatory if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's

7

honesty, integrity, virtue, or reputation." *Moldovan*, 2016 WL 4131890, at *6. Mitsubishi contends that the Statements "impugned the quality of [Mitsubishi's] turbines, thus harming [its] reputation in the power generation industry and deterring third parties from dealing with [Mitsubishi]." (Counterclaim ¶ 22.)

As an initial matter, a defamatory statement must identify the defamed entity, although "[i]t is not necessary that the individual referred to be named if those who knew and were acquainted with the plaintiff understand from reading the publication that it referred to [the] plaintiff." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 671 (S.D. Tex. 2010). "However, the settled law requires that the false statement point to the plaintiff and to no one else." *Id.*

Mr. Seaton never specifically identified Mitsubishi in the Statements. But Mitsubishi asserts that it "is common knowledge in the power generation industry that [Mitsubishi's] turbines were used in the Brunswick Project mentioned in the Statements." (Counterclaim ¶ 18.) In support, Mitsubishi alleges that "numerous current and potential customers immediately contacted" Mitsubishi after the conference call "to inquire as to what were the issues with quality and completeness of [Mitsubishi's] turbines." (*Id.* ¶ 23.)

Mitsubishi need not allege that any casual listener would recognize Mitsubishi as the provider of the Turbines that Mr. Seaton references. *Rimkus*, 688 F. Supp. 2d at 671. Rather, it is sufficient that others in the power generation industry would identify Mitsubishi as the party being allegedly defamed. *Id.* Under the permissive standard that the Court must apply in the motion to dismiss stage of litigation, Mitsubishi has plausibly asserted that others in the industry could and did recognize Mitsubishi in the Statements.

Although the Statements plausibly identify Mitsubishi, Mitsubishi must also plausibly allege facts demonstrating that the Statements are defamatory. Standing alone, Mitsubishi's claim that the Statements harmed its reputation appear conclusory and likely would not withstand scrutiny even at the motion to dismiss stage of litigation. *See Twombly*, 550 U.S. at 555. However, considered alongside other factual allegations in the Counterclaim, Mitsubishi plausibly alleges that the Statements were defamatory concerning it.

Specifically, Mitsubishi alleges that "numerous current and potential clients customers immediately contacted [Mitsubishi] after the phone call to discuss "the Statements and to inquire as to what were the issues with quality and completeness of [Mitsubishi's] turbines." (Counterclaim ¶ 23.) This allegation permits a reasonable inference that the Statements injured Mitsubishi's reputation and caused at least the potential for financial injury. Because the Court views all of the factual allegations in the light most favorable to Mitsubishi, Mitsubishi's claim survives the motion to dismiss.

### 3. Mitsubishi Plausibly Alleges the Requisite Degree of Fault

Whether the entity allegedly defamed is either a private or public entity determines the requisite degree of fault to support a claim for defamation. *In re Lipsky*, 460 S.W.3d at 593. "A private individual need only prove negligence, whereas a public figure or official must prove actual malice. 'Actual malice' in this context means that the statement was made with knowledge of its falsity or with reckless disregard for its truth." *Id.* (citations omitted). "Determining whether a corporation is a public or private figure requires a case by case analysis." *Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, 553 F. Supp. 2d 680, 689 (N.D. Tex. 2008) (citing *Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325 (5th Cir. 1993) (establishing a three factor test for determining whether a corporation is a public figure)).

9

Neither party identifies whether Mitsubishi constitutes a public or private entity. The Court, however, need not resolve that question because, even under the higher degree of fault required to support a claim for defamation against a public figure, Mitsubishi alleges facts sufficient—although just barely—to survive a motion to dismiss.

Mitsubishi contends that "Fluor had actual knowledge that the Statements were false as to [Mitsubishi], or acted with reckless disregard for the truth of the Statement[s]." (Counterclaim ¶ 20.) Standing alone, this mere "formulaic recitation of the elements of a cause of action" likely would not survive a motion to dismiss, which requires that a party allege *facts*, not simply make conclusory statements. *See Twombly*, 550 U.S. at 555. However, other factual allegations in the Counterclaim support the reasonable inference that Mr. Seaton either knew the Statements to be false or acted with reckless disregard for the truth of the statements.

A reasonable inference can be drawn that as the CEO speaking for Fluor during an earnings call, Mr. Seaton was fully informed of the Brunswick Project and any issues with Mitsubishi at the time he made the Statements. At the time of the call, the Brunswick Project had been completed and VEPCO had paid Mitsubishi in full. According to the TSA, VEPCO's payment signaled that the work was complete, fully functional, and achieved the "Minimum Performance Guarantees." (Counterclaim ¶ 12.) Additionally, although the Counterclaim does not specify when, the President of Fluor referred to the Brunswick Project as "a prime example of Fluor's service excellence [and its] ability to achieve quality completion ahead of schedule." (*Id.* ¶ 14 (emphasis omitted).)

Drawing all reasonable inferences in Mitsubishi's favor, the Court can reasonably infer that Mitsubishi plausibly alleges that the Brunswick Project was a success. Accepting all of Mitsubishi's factual allegations as true and drawing all reasonable inferences in Mitsubishi's

favor, Mitsubishi has plausibly alleged that Mr. Seaton either knew the statements to be false or acted with reckless disregard for the truth of the statements.

### 4. Mitsubishi Plausibly Alleges Defamation *Per Se* and Need Not Claim Damages

Unless the defamatory statements are defamatory *per se*, the plaintiff must plead and prove damages. *In re Lipsky*, 460 S.W.3d at 593. Statements are defamatory *per se* if they "are so obviously hurtful to the person aggrieved that they require no proof of their injurious character to make them actionable." *Moldovan*, 2016 WL 4131890, at *6. "A false statement will typically be classified as defamatory *per se* if it injures a person in his *office, profession, or occupation*; charges a person with the commission of a crime; imputes sexual misconduct; or accuses one of having a loathsome disease." *Id.* (emphasis added).

In isolation, Mitsubishi's assertion that the Statements harmed its reputation in the power generation industry may be conclusory, but additional assertions that current and potential clients contacted Mitsubishi about the Statements to inquire about the quality of Mitsubishi's turbines bring the allegations beyond a conclusory status. It is reasonable to infer from these subsequent calls that the Statements injured Mitsubishi in its business. *See In re Lipsky*, 460 S.W.3d at 596 (finding that allegedly false statements injuring a company's reputation adequately alleged defamation *per se* because the statements impugned the company's "fitness" to conduct its business). Because an alleged harm to the entity's business plausibly alleges defamation *per se* at the motion to dismiss stage, Mitsubishi does not have to demonstrate specific damages. *In re Lipsky*, 460 S.W.3d at 593.

### 5. Conclusion: The Motion to Dismiss the Defamation Counterclaim Will Be Denied

Mitsubishi alleges facts sufficient to state a claim for defamation. First, Mitsubishi plausibly alleges that Mr. Seaton, acting on behalf of Fluor, made statements during an earnings

11

call with shareholders that impugned the quality of the turbines used in the Brunswick Project. Mitsubishi plausibly alleges that the Statements are provably false by alleging facts which could support that proposition. Further, Mitsubishi plausibly alleges that the Statements identified it as the provider of those turbines to the relevant listeners—others in the industry. Mitsubishi also plausibly alleges that the Statements were defamatory in nature by alleging that current and potential clients called it to discuss the conference call and question the quality of Mitsubishi's turbines. If the Statements are false, they would be defamatory as to Mitsubishi.

Additionally, Mitsubishi plausibly contends that Fluor acted with the requisite degree of fault by pointing to facts sufficient to support the inference that there was no quality control issue with its turbines. If the Statements are false, Mr. Seaton acted with knowledge of their falsity or reckless disregard for the truth. Finally, Mitsubishi plausibly alleges defamation *per se* by alleging that, after the Statements, current and prospective clients called and questioned the quality of Mitsubishi's work. Thus, the Motion to Dismiss will be denied.

### C. The Allegedly Defamatory Statements Are Not Entitled to Privilege at this Early Stage of Litigation

Fluor next argues that the Statements are subject to two different privileges which shield Fluor from liability for defamation. First, Fluor contends that the absolute litigation privilege protects its statements, and second, Fluor asserts that the conditional common-interest privilege applies. At this early stage, in which the Court must accept all factual allegations in the counterclaim as true and view them most favorably to Mitsubishi, the Court cannot find that either privilege insulates Fluor from liability.

Privilege is an affirmative defense to a defamation claim. *See, e.g., Saudi v. Brieven*, 176 S.W.3d 108, 118 (Tex. Ct. App. 2004); *see also Gonzalez v. Methodist Charlton Med. Ctr.*, No. 10-11-00257-CV, 2011 WL 6091255, at *12 (Tex. Ct. App. Dec. 7, 2011). As such, the

defendant "has the burden to plead and prove its applicability." *Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 648 (Tex. Ct. App. 2014) (referring specifically to qualified privilege). At the motion to dismiss stage of the litigation, it would be premature to evaluate this affirmative defense.

Even if the Court were to evaluate the defense, it must view all the factual allegations in the light most favorable to Mitsubishi. Mitsubishi alleges that Mr. Seaton made the Statements during an earnings call outside of a judicial proceeding and before commencement of this litigation. Although Texas courts "have extended the judicial proceedings privilege beyond the courtroom to communications made in contemplation of and preliminary to judicial proceedings," they also have limited the application of the privilege. *BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391, 402 (5th Cir. 2017). "Texas caselaw is clear that our analysis must focus on the connection between the communications and the specific legal action [the party/speaker] now claims that it was contemplating, rather than legal action more broadly." *Id.* at 403. Fluor contends that Mr. Seaton's statement, "we are pursuing our options," refers to litigation because "those words can only be understood then to at least include Fluor's legal options to redress the injuries incurred on the projects referenced in the Statements." (Mem. Supp. Mot. Dismiss 18.) However, viewing the factual allegations in the most favorable light to Mitsubishi, as the Court must, it is reasonable to infer that this statement referenced legal action generally and not this specific legal action, a relationship too attenuated to recognize privilege.

Additionally, "the act to which the privilege applies . . . *must be in furtherance of that representation.*" *BancPass*, 863 F.3d at 403 n.5 (quoting *Russell v. Clark*, 620 S.W. 2d 865, 870 (Tex. Ct. App. 1981)) (alteration omitted). Mr. Seaton made the Statements during an earnings call that took place before the litigation commenced and that concerned "Fluor's Second Quarter

13

Consolidated Financial Results for 2017." (Mem. Supp. Mot. Dismiss 2.) A reasonable inference, therefore, could be that the Statements were made for purposes unrelated to the current litigation. Finally, at this early stage, the Court cannot discount a possible inference that the "options" pursued might include internal changes to Fluor's bid assumption process. All reasonable inferences inure to Mitsubishi's benefit for purposes of this motion.

Separately, Fluor asserts a common interest privilege that it purports would insulate the Statements from a defamation claim. The common interest privilege "exists when 'the person making the statement . . . make[s] it in good faith on a subject matter in which the speaker has a common interest with the other person, or with reference to which the speaker has a duty to communicate to the other.'" *Saudi v. Brieven*, 176 S.W.3d at 118 (alterations in *Saudi*) (quoting *Grant v. Stop-N-Go Mkt. of Tex.*, 994 S.W. 2d 867, 874 (Tex. Ct. App. 1999). The privilege does not apply, however, "if the defendant makes the statement with . . . . 'actual malice—that is, it is made with knowledge of its falsity or with reckless disregard as to its truth.'" *Id.* (quoting *Grant*, 994 S.W.2d at 874). As discussed, Mitsubishi plausibly alleges that Fluor made the Statements with knowledge of their falsity of reckless disregard as to the truth of the Statements. Therefore, Fluor cannot invoke the privilege at this stage of the litigation.

### V. Conclusion

For the foregoing reasons, the Court will deny the Motion to Dismiss.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 6/15/18
Richmond, Virginia

14