IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FLUOR ENTERPRISES, INC.,

    **Plaintiff,**

v.                                                   Civil Action No. 3:17cv622

MITSUBISHI HITACHI POWER
SYSTEMS AMERICAS, INC.,

    **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Fluor Enterprises, Inc.'s ("Fluor") Motion to Strike Defendant's Jury Demand (the "Motion to Strike") pursuant to Federal Rule of Civil Procedure 39(a)(2). (ECF No. 45.) Defendant Mitsubishi Hitachi Power Systems Americas, Inc. ("Mitsubishi") responded, and Fluor replied. (ECF Nos. 47, 48.) Accordingly, the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332(a).[1] For the reasons that follow, the Court will grant Fluor's Motion to Strike.

---

[1] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Fluor is a citizen of California and Texas, Mitsubishi is a citizen of Delaware and Florida, and the Complaint alleges damages exceeding $75,000.

# I. Factual and Procedural Background

The Court offers only a brief recitation of the factual and procedural background and assumes familiarity with its June 15, 2018 Memorandum Opinion. (ECF No. 33.)

## A. Relevant Factual Background

In February 2012, Mitsubishi entered into a Turbine Supply Agreement (the "TSA") with Virginia Electric and Power Company ("VEPCO") to sell turbine generators–one steam turbine generator and three combustion turbine generators–to VEPCO for use in a power generating facility. Because the facility was located in Brunswick County, Virginia, the project became known as the "Brunswick Project."

Five months later, in July 2012, VEPCO contracted with Fluor for Fluor to construct the Brunswick Project (the "Fluor Contract"). Under the Fluor Contract, Fluor was responsible for many aspects of the Brunswick Project, including "all design, engineering, procurement, construction, installation, start-up[,] and testing work necessary to engineer, procure and construct the Brunswick Project." (Counterclaim ¶ 8, ECF No. 17.) Mitsubishi was not a party to the Fluor Contract. Around the same time VEPCO entered into the Fluor Contract, it assigned the TSA to Fluor through a Partial Assignment, Assumption, and Coordination Agreement ("Partial Assignment Agreement"). (Partial Assignment Agreement 18, ECF No. 1-8.) VEPCO retained the obligation to pay Mitsubishi per the terms of the TSA.

Fluor alleges that Mitsubishi breached the TSA and the Partial Assignment Agreement because it delivered parts late; it delivered improperly labeled parts; and it delivered parts that did not meet minimum quality requirements. (Compl. ¶¶ 24, 33, ECF No. 1.) Fluor further contends that Mitsubishi failed to pay Fluor the liquidated damages to which it is entitled pursuant to the TSA and the Partial Assignment Agreement. (Compl. ¶ 33.)

Mitsubishi brings a defamation claim against Fluor based on statements made by Fluor's CEO, David Seaton, during an August 3, 2017 earnings call with shareholders. (Counterclaim 10–14.) During this call, Mr. Seaton stated:

> All three projects, four if you include **the Brunswick project** that incurred a charge in 2015, had a fundamental problem. And the projects did not meet the original baseline assumptions due to improper estimating, craft productivity and *equipment issues*. All of these projects were bid in 2014 by the same pursuit team.
>
> In addition, all four projects **were based on next gen turbines or steam generators** that were first of a kind for Fluor. ***The quality control and completeness of these turbines delivered to the site were not in line with our bid assumptions, and we are pursuing our options.***

(Counterclaim ¶ 15.) (emphasis in original).

Mitsubishi contends that Mr. Seaton's statements were false and therefore defamatory because:

> (a) the quality control and completeness of the turbines was in line with all reasonable requirements and expectations for the Brunswick Project; (b) any equipment issues with the turbines were minor in nature, and did not cause Fluor's substantial financial losses or the "fundamental problem" to which the Statements refer; and (c) the turbines on the Brunswick Project were not "next gen" or "first of a kind."

(Counterclaim ¶ 19.) Mitsubishi requested "a trial by jury for all issues so triable."

(Counterclaim 15.)

The Partial Assignment Agreement and the TSA each contain jury trial waiver provisions that form the basis for Fluor's argument to strike the jury demand contained in Mitsubishi's Counterclaim. The Partial Assignment Agreement contains the following provision:

> 9.8 Governing Law; Choice of Forum; Waiver of Jury. This Agreement, and all amendments and modifications hereof, and all documents and instruments executed and delivered pursuant hereto or in connection herewith, shall be governed by and construed and enforced in accordance with the internal laws of the Commonwealth of Virginia, without regard to principles of

3

> conflict of laws. All judicial actions or proceedings brought against any Party with respect to this Agreement shall be brought in any state or federal court of competent jurisdiction in the Commonwealth of Virginia provided, however, that if a federal court in the Eastern District of the Commonwealth of Virginia has and accepts jurisdiction over the matter at issue the judicial action or proceeding shall be brought in such federal court, and by its execution and delivery of this Agreement, each Party accepts, generally and unconditionally, the exclusive jurisdiction of the aforesaid state and federal courts. Each Party irrevocably waives any objection (including any objection based upon the grounds of "forum non conveniens") that it now or hereafter may have to the bringing or prosecution of any such action or proceeding with respect to this Agreement or the documents and instruments contemplated hereby in the Commonwealth of Virginia. Each Party hereby irrevocably consents to the service of any and all process in any action or proceeding by mailing a copy of such process to such Party at the address for such Party set forth in Section 9.6 (Notices) of this Agreement. EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS A PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION RESULTING FROM, ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

(Partial Assignment Agreement § 9.8, ECF No. 1-8.) (emphasis in original). The TSA includes the following jury trial waiver:

> 21.8.2 Waiver of Trial by Jury. EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS CONTRACT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS A PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION RESULTING FROM, ARISING OUT OF OR RELATING TO

>     THIS CONTRACT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

(TSA § 21.8.2, ECF No. 1-1.)

### B. Procedural Background

On September 13, 2017, Fluor filed its Complaint against Mitsubishi, alleging one claim for breach of contract. (ECF No. 1.) On October 16, 2017, Mitsubishi timely answered, asserting a single counterclaim against Fluor for defamation. (ECF No. 17.) Fluor moved to dismiss Mitsubishi's defamation claim pursuant to Federal Rule of Civil Procedure 12(b)(6). On June 15, 2018, the Court denied Fluor's Motion to Dismiss. (*See* June 15, 2018 Order, ECF No. 34.)

On August 23, 2018, Fluor filed its first Motion to Strike Defendant's Jury Demand, (ECF No. 35), invoking Federal Rule of Civil Procedure 12(f) and arguing that the Court should strike Mitsubishi's demand for a jury trial because the jury trial waivers in the Partial Assignment Agreement and the TSA preclude Mitsubishi's demand for a jury trial. The Court denied that motion because, based on Rule 12(f), "Fluor plainly filed its Motion to Strike on an untimely basis."[2] (Oct. 12, 2018 Mem. Op. 5, ECF No. 41.)

In the instant motion, Fluor invokes Federal Rule of Civil Procedure 39(a)(2) as the basis for its Motion to Strike. Flour again contends that the contractual provisions quoted above operate as a waiver of Mitsubishi's jury trial demand. In response, Mitsubishi argues that its defamation counterclaim "was a wholly unexpected tortious action that is entirely independent of

---

   [2] The Federal Rules of Civil Procedure require that a moving party make a motion to strike matters specified in Rule 12(f) before responding to the pleading at issue if it is one to which a response is allowed. Fed. R. Civ. P. 12(f). Mitsubishi's Counterclaim constituted a pleading to which a response was permitted and one to which Fluor had already responded. *See* Fed. R. Civ. P. 12(a)(1)(B) (stating that "[a] party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.").

both the TSA and the Partial Assignment Agreement." (Resp. Mot. Strike 6, ECF No. 47.) As a result, Mitsubishi asserts that the defamation claim "does not and cannot fall within the scope of either contractual jury waiver clause invoked by Fluor." (*Id.*)

## II. Applicable Law and Analysis

Fluor moves to strike the jury pursuant to Federal Rule of Civil Procedure 39(a)(2). Rule 39(a) provides that:

> (a) When a Demand Is Made. When a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless:
> (1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record; or
> (2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.

Fed. R. Civ. P. 39(a).

Though the Seventh Amendment of the United States Constitution guarantees the right to a jury trial in civil cases, courts in this circuit have long recognized that parties to a contract may waive this right by prior written agreement.[3] *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir. 1986); *see also Smith-Johnson Motor Corp. v. Hoffman Motors Corp.*, 411 F. Supp. 670, 677 (E.D. Va. 1975) ("contractual provisions waiving trial by jury in civil actions are neither illegal nor contrary to public policy"). The party seeking enforcement of the waiver must show that consent to the waiver was both voluntary and informed. *Leasing Serv. Corp.*, 804 F.2d at 833*; see also Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke Cty, N.C.*, 149 F.3d 277, 280 (4th Cir. 1998) ("The contractual waiver of a constitutional right must be a knowing waiver, must be voluntarily given, and must not undermine the relevant public interest in order to be

---

[3] Federal law governs the right to a jury trial in federal court. *See Simler v. Conner*, 372 U.S. 221, 222 (1963) (stating that federal law controls to insure uniformity in the exercise of the Seventh Amendment).

enforceable."). "In considering whether the waiver was voluntary, a court will consider (1) the parties' negotiations concerning the waiver provision; (2) the conspicuousness of the provision in the contract; (3) the relative bargaining power of the parties; and (4) whether the waiving party's counsel had an opportunity to review the agreement." *Zaklit v. Glob. Linguist Sols., LLC*, 53 F. Supp. 3d 835, 855 (E.D. Va. 2014) (internal quotation marks and citation omitted).[4]

Mitsubishi does not dispute the jury trial waivers were knowing and voluntary.[5] But because Fluor bears the burden, the Court must analyze and consider whether Fluor has shown the waivers are enforceable. The Court finds the four *Zaklit* factors readily satisfied here. First, the parties do not dispute that contract negotiations involved discussions regarding the jury trial waiver provisions. Second, the provisions are plainly conspicuous in each agreement and emphasized in part with capital letters. Third, the parties negotiating the contracts had relatively even bargaining power. Fourth, sophisticated counsel represented the parties during contract negotiations. As a result, the Court finds Mitsubishi's consent to the jury trial waivers both voluntary and informed.

Rather than challenge the validity of the jury trial waivers, Mitsubishi contends that the defamation counterclaim, which involved "independent, unforeseeable conduct among parties involved in a number of distinct projects," falls outside the scope of the jury trial waiver

---

[4] "Generally, a party's contractual jury trial waiver is enforceable unless a party alleges that its agreement to waive its right to a jury trial was itself induced by fraud." *Terry Phillips Sales, Inc. v. SunTrust Bank, et al.*, No. 3:13-CV-468, 2014 WL 670838, at *7 (E.D. Va. Feb. 20, 2014).

[5] While the court should "indulge every reasonable presumption against waiver," *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937), Mitsubishi does not argue that it lacked bargaining power during negotiations, that it did not understand the jury trial waiver provisions, that it lacked counsel, or that a party fraudulently induced Mitsubishi to enter the agreement, *see, e.g.*, *Dunkin' Donuts Franchised Rests LLC, et al., v. Manassas Donut Inc., et al.*, No. 1:07cv446 (JCC), 2008 WL 110474, at *2–*4 (E.D. Va. Jan. 8, 2008) (discussing generally factors that weigh against enforcing jury trial waiver). Moreover, Mitsubishi does not contest that the jury trial waiver applies to Fluor's breach of contract claim.

provisions. (Resp. Mot. Strike 8.) Mitsubishi further argues that contractual jury trial waivers are narrowly construed. For this argument, Mitsubishi cites cases from other jurisdictions while ignoring case law from this district that provides to the contrary. (*Id*. 6–7.)

In this jurisdiction, "[j]ury trial waivers in a contract are to be construed broadly to encompass both contract claims and related tort claims where the causes of action would not exist were it not for the relationship between [the parties], as well as counterclaims whether or not arising from the contract at issue." *Zaklit*, 53 F. Supp. 3d at 857 (quoting *Terry Phillips Sales*, 2014 WL 670838 at *7).

Mitsubishi argues that the Court should not find the jury trial waivers applicable because the "impetus for Fluor's earnings explanations, as well as the broad remarks themselves, were wholly independent of either agreement and impugned [Mitsubishi's] turbine equipment across a variety of projects unrelated to the construction of the power station in Brunswick County, Virginia." (Resp. Mot. Strike 9.) But Fluor's allegedly defamatory statements specifically identifying the Brunswick Project were not wholly independent of either agreement. (*Id*. 2.) Rather, the statements related to, and arose from, Mitsubishi's performance under the TSA; specifically, Mitsubishi supplying turbines to the project. Simply because Fluor mentioned in the allegedly defamatory statement that other projects similarly fell short does not take the defamation counterclaim out of the scope of the jury trial waivers at issue here.

Examining Mitsubishi's counterclaim further shows that the alleged defamatory statement related to the Brunswick Project, meaning it pertained to the subject matter of the TSA that VEPCO assigned to Fluor. For example, Mitsubishi contends that the "industry-wide accolades for the Brunswick Project, and . . . Flour's public statements lauding the Project show that there were no equipment, quality control or completeness issues with the Turbines."

(Counterclaim 13–14.) Mitsubishi asserted that the statements are false because "the quality control and completeness of the turbines was in line with all reasonable requirements and expectations for the Brunswick Project." (*Id.* 13.) Because the counterclaim pertains to Mitsubishi's performance regarding the TSA, the Brunswick Project, and the quality of its turbines, the litigation results from, arises out of, or relates to the contract or transactions that the TSA and the Partial Assignment Agreement contemplate. As a result, the jury trial waivers compel granting Flour's Motion to Strike.

Lastly, Mitsubishi contends that "Rule 39 does not provide that a motion to strike may be 'made at any time.'" (Resp. Mot. Strike 15.) Rule 39, however, does not include a time limit. *See* Fed. R. Civ. P. 39. And nothing prevents the Court from granting a Motion to Strike brought pursuant to Rule 39(a) where, as here, the parties are months away from trial.

### III. Conclusion

For the foregoing reasons, the Court will grant the Motion to Strike. (ECF No. 45.) An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: April 16, 2019
Richmond, Virginia

9